UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARMEN V. MENENDEZ,

       Plaintiff,

vs.                                              Case No. 3:07-cv-92-J-HTS

MICHAEL ASTRUE,
Commissioner of
Social Security,

       Defendant.
_____

**OPINION AND ORDER**[1]

**I. Status**

Carmen Vicenta Menendez is appealing the Social Security Administration's denial of her claims for Disability Insurance Benefits and Supplemental Security Income. Her alleged inability to work is based on headaches, back, knee, and ankle pain, psychological problems, and obesity. *See* Transcript of Administrative Proceedings (Tr.) at 115-16; *see also id.* at 102 (back and knee pain). Plaintiff was ultimately found not disabled by Administrative Law Judge (ALJ) William H. Greer in a Decision entered on August 7, 2006. *Id.* at 18, 25. Ms. Menendez has

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #12).

exhausted the available administrative remedies and the case is properly before the Court. Plaintiff makes a variety of allegations in an attempt to demonstrate the Commissioner erred. *See* Memorandum in Support of Plaintiff's Position (Doc. #18; Memorandum) at 6-19. Her arguments will be further described in the context of the Court's discussion.

## II. Legal Standard

This Court reviews the Commissioner's final decision as to disability[2] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by 'substantial evidence[.]'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also*

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

*Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

####   A.  Residual Functional Capacity (RFC)

Plaintiff contends "the ALJ's analysis fails to comprehend the true severity of her mental disorder, the effect of gastric bypass surgery with obesity on her abdominal pain . . ., back pain and carpal tunnel syndrome." Memorandum at 7. She further argues the judge erred with regard to his evaluation of her knee condition. *Id.* at 8.

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that affect what [one] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is defined in the regulations as what an individual "can still do despite [his or her] limitations." *Id.* It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. *See id.* §§ 404.1545(a)(3), 416.945(a)(3).

Thus, "observations of [a claimant's] limitations from [his or her] impairments . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered. *Id.* This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision. *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations may be exertional, nonexertional, or both. *Id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner. *See id.* §§ 404.1546, 416.946. According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

**1. Mental**

Concerning Plaintiff's psychological difficulties, the ALJ found she "has mental restrictions because of limitations in concentration caused by depression which she has had a long time." Tr. at 22. Noting "[t]he claimant's Global Assessment of Functioning (GAF) score was only 50 . . . in 2001[,]" the judge pointed out she "was able to work this entire time." *Id.* After

summarizing treatment notes from Dr. Carlos Torrellas, the judge considered

> a mental status questionnaire wherein [this physician] identified the claimant's signs and symptoms of depression.  The undersigned has given [his] opinion some weight but only to the extent it is consistent with the other evidence in the file and [his] own treatment notes.  Dr. Tor[r]ellas indicated the claimant had an appetite disturbance with weight change but the evidence confirms the weight change was due to gastric bypass surgery, not a mental disorder.  Dr. Tor[r]ellas endorsed an item indicating the claimant was emotionally withdrawn, but there is nothing to indicate the claimant was emotionally withdrawn at all.  Dr. Tor[r]ellas also opined the claimant has had 3 episodes of decompensation each lasting at least 2 weeks.  Again however, there is nothing that indicates the claimant has ever decompensated – a severe exacerbation of mental illness requiring intensive treatment and a less stressful situation.

*Id.* at 23 (citation to the record omitted).

"[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis."  *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see Phillips*, 357 F.3d at 1240-41. However, the ALJ may not simply substitute his judgment for that of a medical expert. *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

Plaintiff takes issue with the ALJ's implication "that Dr. Torrellas's check-off on the mental impairment questionnaire concerning 'appetite disturbance with weight change' was somehow inaccurate because the plaintiff's weight loss was 'due to gastric bypass surgery, not a mental disorder[.]'" Memorandum at 14 (emphasis omitted). According to Ms. Menendez, the judge "overlook[ed] the fact that the form provided to the psychiatrist accurately represented the framework of Listing section 12.04A, 1.b." *Id.* at 14-15.

While the cited listing indeed refers to "[a]ppetite disturbance with change in weight[,]" it would seem that a decrease in weight caused by an operation does not evidence appetite disturbance. To the extent the doctor's finding referred to a loss of weight occasioned by gastric bypass surgery--Plaintiff advocates

- 6 -

no alternative explanation--the ALJ appears to have made a valid observation.

Claimant also attacks the judge's conclusion "that 'there is nothing to indicate [she] was emotionally withdrawn at all[,]'" pointing to the report of a clinical psychologist and one of Dr. Torrellas's treatment notes.  *Id.* at 15.  The report, *see* Tr. at 123, 324, notes that individuals who score similarly to Ms. Menendez on the Minnesota Multiphasic Personality Inventory (MMPI) "may" have interests that "lead to minimizing social interaction[.]"  *Id.* at 324.  The cited progress notes report depressed mood, *id.* at 382, 383, and complaints of problems with "interest in activities[.]"  *Id.* at 383; *cf. id.* at 89 (Claimant's assertion on an SSA form that she has "basically sh[i]ed away from family because of illness").

These records provide scant support for the proposition that Claimant was experiencing emotional withdrawal.  The MMPI report is a rather generalized profile phrased in terms of probabilities and lacking in concrete observations as to whether Plaintiff is in fact emotionally withdrawn.  The indication of depressed mood in the progress notes is also too generic to permit specific inferences.  Finally, the reference to an alleged difficulty with interest in activities is merely a recounting of Plaintiff's own complaints.

Ms. Menendez perceives two errors in the judge's rejection of Dr. Torrellas's opinion that episodes of decompensation had occurred. She claims "the ALJ overlooked a portion of an opinion expressed by Gary W. Buffone, Ph.D., a non-examining state consultant who identified at least two such decompensations[.]" Memorandum at 15-16. Next, she writes the judge "was wrong to describe a decompensation as necessarily involving 'intensive treatment and a less stressful situ[a]tion[.]'" *Id.* at 16. Nevertheless, as the Commissioner observes, "Plaintiff's argument on this subject is irrelevant" since she "does not satisfy the remaining criteria of the listing[.]" Memorandum in Support of the Commissioner's Decision (Doc. #19; Opposition) at 14.[3] In sum, she has failed to show either that her mental condition is associated with functional limitations beyond those found by the ALJ or that the judge committed some other error requiring reversal.

2.   **Effects of Gastric Bypass Surgery**

Claimant asserts the judge incorrectly evaluated "the effect of gastric bypass surgery with obesity on her abdominal pain (related to an un-repaired hernia), back pain and carpal tunnel

---

[3] Ms. Menendez does not specify the intended import of her argument. To the extent it is being asserted a claimant's having experienced infrequent episodes of decompensation would need to be included in the hypothetical question or RFC finding, there is authority suggesting otherwise. *See, e.g., Roe v. Chater*, 92 F.3d 672, 676 n.6 (8th Cir. 1996) (rare or infrequent incidents of decompensation need not be included in hypothetical). Thus, even assuming a potential failure to recognize such occurrences, the omission was inconsequential.

syndrome. In fact, the abdominal pain was not . . . characterized by the ALJ as being severe[.]" Memorandum at 7.

In his Decision, the judge took note of the gastric bypass surgery, and he included "history of gastric bypass surgery" amongst the severe impairments acknowledged. Tr. at 20 (emphasis omitted). The records relied on by Plaintiff indicate that in October 2005 she had complained of intermittent abdominal pain experienced for three weeks. *Id.* at 277. She underwent an endoscopy in January 2006, which revealed a normal esophagus. *Id.* at 322; *cf. id.* at 383 (January 2006 progress note reporting Claimant stated she was diagnosed with an ulcer), 398-99 (January 2006 report listing ulcer but characterizing chief complaints as right upper back and low back pain). This evidence does not establish an ongoing or long-term problem with abdominal pain. In any event, Claimant fails to specify what functional limitations result from the alleged pain.[4]

The ALJ found "back pain[ and] carpal tunnel syndrome (CTS) of the left hand" to constitute severe impairments. *Id.* at 20 (emphasis omitted). In his RFC findings, he determined Plaintiff needed the "freedom to stand up and loosen up every hour" and, while she could "stand and/or walk for about 2 hours each in an 8-

---

[4] Accordingly, her assertion "the abdominal impairment" was inadequately evaluated "among the combination of the plaintiff's impairments" Memorandum at 18, is likewise rejected.

hour workday[,]" she "should not be required to walk more than 15 minutes at one time[.]"  *Id.* at 21 (emphasis omitted). Additionally, he recognized she "cannot use her left hand frequently." *Id.* (emphasis omitted).  Entirely absent from Plaintiff's brief is any explanation of how the judge's RFC findings fail to take account of her back pain and CTS.  The nearest she comes to such an argument is through her statement that Dr. Fara "Nadal's progress note of December 22, 2004 describes [her] back pain as being related to sitting for extended periods of time, standing and walking[,]" Memorandum at 8 (footnote omitted); *see* Tr. at 171, but neither her description nor the note is clearly inconsistent with the ALJ's findings.[5]

### 3. Knee Pain

Finally, it is asserted "[t]he ALJ was simply in error when he wrote that the plaintiff's functional limitations with respect to the knee were not impacted . . . by the pain from [a] fall[.]" Memorandum at 8.  Claimant states "[i]t appears that the ALJ mistook the physician's note about hydrocodone, prescribed for . . . headaches, having no effect on her knee pain as meaning

---

[5] Unpersuasive, too, is the suggestion the judge was required to explicitly discuss an unquantified report of "'difficulty ambulating, standing and sitting[,]'" whether Plaintiff's pain complaints were "'very prominent'" and whether she had any difficulty "getting on and off of the exam table and her need for trigger point pain injections[.]"  Memorandum at 17.

that the October fall had no further limiting knee related effects[.]" *Id.* (footnote omitted).

The judge remarked that "remaining functional limitations as of November 2004 included avoiding kneeling and walking long distances, no stairs or climbing and no repetitive getting up and down from a seated position. These were her limitations despite the fact that she fell in October 2004[.]" Tr. at 21 (citing the document currently found at page 173 of the transcript). Although the notes are difficult to decipher, it seems the ALJ may have misread the sentence in question. Still, the note specifies no change in functional limitations and offers no opinion that any aggravation of symptoms was expected to be other than temporary.

**B. Sit and Squirm Jurisprudence**

Claimant accuses the ALJ of employing sit and squirm jurisprudence. Memorandum at 17-18. More particularly, she objects to the judge using his observation that she sat much longer than ten minutes at the hearing despite testifying she could not do so. *Id.* at 17; *see* Tr. at 23.

Sit and squirm jurisprudence is engaged in when "an ALJ who is not a medical expert . . . subjectively arrive[s] at an index of traits which he expects the claimant to manifest[;]" if the claimant fails to exhibit these traits at the hearing, the claim is denied. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)

(per curiam); *see also Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (per curiam)). Although the determination of a claimant's credibility is reserved for the ALJ, adequate reasons must be articulated for questioning this credibility, and the use of sit and squirm jurisprudence to discredit a claimant is prohibited. *See Johns*, 821 F.2d at 557; *see also Patterson v. Chater*, 983 F. Supp. 1410, 1416-17 (M.D. Fla. 1997). While a claimant's demeanor during the hearing may be considered, the ALJ must not reject objective medical evidence and the claimant's testimony based solely on his observations during the hearing. *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). However, the ALJ may consider a claimant's demeanor among other criteria in making credibility determinations. *See id.*; SSR 96-7p.

The judge mentioned in his analysis Ms. Menendez's behavior at the hearing was inconsistent with her claim of being able to sit no longer than ten minutes, Tr. at 23, but this observation did not form the ALJ's sole reason for discounting Plaintiff's credibility. It was instead just one reason among several given as a basis for questioning Claimant's testimony. *See id.* The judge's observation was, moreover, one which he was qualified to make. If an individual testifies that he or she cannot do something yet is observed to do that very thing at the hearing, it is certainly

- 12 -

valid for the judge to consider the circumstance in weighing the person's credibility. Thus, under the circumstances, no reversible error was committed through comment on Plaintiff's demeanor at the hearing.

**C. Imperfections in the Certified Record**

Lastly, Plaintiff complains of two "problems with the certified record[.]" Memorandum at 19 (emphasis and capitalization omitted). She writes that "[p]ortions of administrative exhibit 1F appear to be missing as only one page of a 1986 psychological report from Henry D. Bates, Ph.D., appears in the record (Tr. 123)." *Id.* Additionally, "[t]ranscript page 324 evidences a psychological evaluation while the index indicates that page 324 is part of an endoscopy report from Dr. Rawls (Tr. 3)." *Id.*

These flaws are immaterial. The remainder of the psychological report, the first page of which is contained at page 123, is present at pages 324-25. Plaintiff herself makes use of this portion of the document with no apparent difficulty. *See* Memorandum at 15. As to a misprint in the index, the Court agrees with Defendant such a minor oversight "does not warrant remand[.]" Opposition at 16.

## IV.   Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of January, 2008.


/s/        Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of record
    and pro se parties, if any